IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BONNIE SMITH SWEARINGEN, a disabled person, by and through her guardian BERNIE SMITH, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 3:17-CV-00635-NJR-DGW ) |
| ROBERT LENARD, JR., DONNA K. LENARD, DENNA DAVIS, CURTIS MARTIN, and PEOPLES NATIONAL BANK, | ) ) ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM AND ORDER**

**ROSENSTENGEL, District Judge:**

This matter is before the Court *sua sponte* on the issue of federal subject matter jurisdiction. *Foster v. Hill*, 497 F.3d 695, 696-97 (7th Cir. 2007) ("It is the responsibility of a court to make an independent evaluation of whether subject matter jurisdiction exists in every case.").

Bonnie Smith Swearingen is under a guardianship ordered by an Illinois state court, but she resides at a skilled nursing facility in Indiana. (Doc. 18, p. 1). Swearingen has two co-guardians: Plaintiff Bernie Smith and Defendant Deena Davis. (Doc. 18, p. 1). One of her co-guardians, Bernie Smith (and his wife, Tara Smith), originally filed this Complaint on March 28, 2017, in the Southern District of Indiana. (Doc. 18, p. 1). The District Court for the Southern District of Indiana determined venue was not proper there (Doc. 18, p. 5), and transferred the case to the Southern District of Illinois (Docs. 19,

20).

Upon preliminary review of the transferred Complaint, the Court believed it had subject matter jurisdiction. Since that time, Defendants Robert and Donna Lenard ("the Lenards") have filed two Motions to Dismiss for Lack of Jurisdiction. (Docs. 30, 40). The first of the motions (titled "Second Motion to Dismiss")[1] alleges the Court does not have subject matter jurisdiction due to the probate exception and the *Rooker-Feldman* doctrine. (Doc. 31, pp. 3-6). The Court ordered Plaintiff to file an Amended Complaint and a supplement addressing the probate exception.[2] (Doc. 29). Plaintiff filed an Amended Complaint on September 8, 2017 (Doc. 38), but he has not filed a supplement addressing the probate issue.[3]

Before the Court could issue an order on the Second Motion to Dismiss (Doc. 30), the Lenards filed a Third Motion to Dismiss raising the same arguments but adding a claim that this Court does not have jurisdiction due to a lack of complete diversity. (Doc. 40). Normally, the Court would wait for Smith to respond to the new motion before ruling. Because federal courts have an independent duty to assess subject matter jurisdiction, however, the Court finds it proper to proceed with that assessment despite the Third Motion to Dismiss not yet being ripe. Based on its *sua sponte* review, the Court finds that jurisdiction is proper.

---

[1] Because the Lenards filed a Motion to Dismiss while the case was still pending with the District Court for the Southern District of Indiana, the two motions pending before this Court are titled Second and Third Motion to Dismiss respectively.
[2] Although Smith did not file either an Amended Complaint or the supplemental document by the deadline of August 28, 2017, because he is proceeding *pro se*, the Court gave Smith an additional opportunity to do both. (Doc. 34).
[3] The Court is cognizant of the fact that Smith is *pro se* and the issues regarding probate jurisdiction and the *Rooker-Feldman* doctrine are legally complex and likely beyond his experience to address.

## Factual Background

This litigation is brought by Bernie Smith on behalf of his mother, Bonnie Smith Swearingen, concerning property alleged to have been wrongfully taken from Swearingen by Robert Lenard, Jr., Donna Kay Lenard, Deena Davis, Curtis Martin, and Peoples National Bank. (Doc. 38, pp. 1-12). Specifically, Smith alleges the Lenards, in their role as Powers of Attorney for Swearingen's late husband, stole property out of Swearingen's house and fraudulently withdrew money from her bank account. (Doc. 38, pp. 3-5). Smith further alleges Peoples National Bank participated with the Lenards in a conspiracy to steal from Swearingen by hiding money from both Smith and the Court. (Doc. 38, p. 11). Finally, Smith alleges Defendant Deena Davis acted fraudulently and in conspiracy with Defendant Curtis Martin to become the sole trustee of Swearingen's Estate, and in violation of her fiduciary duty, took money from the trust for her personal benefit and to the financial benefit of Martin. (Doc. 38, pp. 6-7, 8-10). Smith requests the Court order Defendants to pay restitution to Swearingen's trust for the alleged illegally removed funds. (Doc. 38, pp. 12-18).

## Analysis

Although reviewing jurisdiction *sua sponte*, the Court notes the Lenards have raised three bases for lack of jurisdiction: (1) the probate exception to federal subject matter jurisdiction; (2) the *Rooker-Feldman* doctrine; and (3) a lack of complete diversity between the parties. (Docs. 30, 40).

Because the Court finds the probate exception and *Rooker-Feldman* doctrine are inapplicable here, and that complete diversity exists between the parties, the Court has jurisdiction to hear Smith's claims. Further, because all of the issues raised in the two

motions to dismiss are addressed as part of the Court's *sua sponte* analysis, both the Second and Third Motions to Dismiss (Docs. 30, 40) will be denied as moot.

**I. PROBATE EXCEPTION**

There are a few longstanding exceptions to what would otherwise be proper federal subject matter jurisdiction. One such limit is commonly referred to as the "probate exception." *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). Under this exception, certain claims regarding the probate of a will or disabled person's trust are excluded from the jurisdiction of the federal courts. *Id.* at 296. This does not mean, however, that *any* claim touching on a probate case falls under the probate exception. *McClellan v. Carland*, 217 U.S. 268, 281 (1910) ("It has long been understood the jurisdiction of the federal courts cannot be impaired by state legislation creating courts of probate."). Rather, the Supreme Court has been clear the probate exception is limited in nature and merely

> reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But *it does not bar* federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall*, 547 U.S. at 311-12 (emphasis added).

The Seventh Circuit has held where a judgment would add to the individual's estate, rather than "reallocate assets among contending claims," the probate exception is not implicated. *Gustafson v. Zumbrunnen*, 546 F.3d 398, 400 (7th Cir. 2008). Here, the remedy Smith requests against all Defendants is restitution to Swearingen's trust. (*See*

Doc. 38, pp. 12-13). Thus, the goal of the litigation to is add to the value of Swearingen's trust, and the probate exception is inapplicable.

Further, claims directed against individuals, rather than the estate itself, are not barred by the probate exception. *Marshall v. Marshall*, 547 U.S. 293, 312 (2006). For this reason, courts routinely find claims involving mismanagement of an estate, fraud, breach of fiduciary duty, or other tortious claims against individuals are not barred by the probate exception—even when probate litigation is ongoing in state court. *Marshall*, 547 U.S. at 312 (stepson's tortious interference with plaintiff's expectation of a bequest did not fall under the probate exception because it was a request for judgment against the person, not the estate); *Jones v. Brennan*, 465 F.3d 304, 307-08 (7th Cir. 2007) (a claim of mismanagement of an estate does not ask the court to administer the estate, but rather to impose tort liability for breach of fiduciary duty); *Wolfram v. Wolfram,* 78 F.Supp. 758, 766 (N.D. Ill. 2015) (breach of fiduciary duty and fraud claims are *in personam,* and therefore not barred by the probate exception).

Here, Smith's allegations of fraud, conspiracy, and violation of a fiduciary duty all assert claims against the defendants as individuals, not the estate, and therefore are not barred by the probate exception. Specifically, Smith claims the Lenards committed fraud by abusing their Powers of Attorney over Swearingen's husband to improperly take assets and property belonging to Swearingen. (Doc. 38, p. 13). The Seventh Circuit has explained that fraud encompasses a variety of conduct intended to cheat another of property. *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000) (the term includes various "multifarious means which are resorted to by one individual to gain an

advantage over another..."). Because the fraud allegation is against the Lenards, as individuals, and not the Swearingen trust, the probate exception is inapplicable.[4]

Similarly, Smith's claims that Davis and Peoples National Bank violated their fiduciary duties toward Swearingen are made against the defendants individually, rather than the trust, and therefore are not subject to the probate exception. To prevail on a claim for breach of fiduciary duty under Illinois law, the plaintiff must prove: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by that breach. *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006) (citing *Neade v. Portes*, 193 Ill.2d 433, 444 (Ill. 2000)). With regard to Davis, it is well recognized a trustee has a duty to employ the diligence and prudence that a person of discretion and intelligence would employ in his own affairs. *McCormick v. McCormick*, 180 Ill.App.3d 184, 197 (Ill. App. Ct. 1988). Smith alleges Davis breached that duty by, among other things, waiving Swearingen's legal claims against the Lenards and misappropriating the property of Swearingen for her own use. Because those actions allegedly resulted in a reduction in the value of Swearingen's property, damages are also alleged.

---

[4] The Lenards also argue that Smith lacks standing to assert any claims against them. (Doc. 41, p. 5). First, the Court notes the Lenards admit standing is an affirmative defense and therefore not relevant to jurisdiction. (Doc. 41, p. 5). Second, the case the Lenards cite to, *Sykes v. Toerpe,* states that a disabled person will have standing where that person is named as a plaintiff, has been injured by the defendants, and that injury can be redressed by a judicial decision. *M.S.G. ex rel. Sykes v. Toerpe,* No. 11 C 07934, 2012 WL 3235240, at *2 (N.D. Ill 2012). The *Sykes* court declined to address whether a next friend could sue on the disabled plaintiff's behalf. Without ruling on that issue, the Court notes that it would be difficult to see how a disabled person could invoke his right to sue without the assistance of a next friend or guardian ad litem. Further, although clothed in the language of standing, the Lenards' real argument is that they cannot be sued at all because the only person who can raise a claim of fraud against them is Davis, who is both implicated as a co-conspirator and is the person who waived all of Swearingen's claims against them. Because neither party has briefed whether fraud can be the basis for waiver of a legal claim, the Court declines to rule on this issue.

With regard to Peoples National Bank, the Illinois Fiduciary Obligations Act governs a financial institution's liability for participation in a breach of fiduciary duty by a third party. 760 ILCS 65/1 *et. seq.*; *Geimer v. Bank of America, N.A.*, 784 F.Supp.2d 926, 932 (N.D. Ill. 2011) (citing *Setera v. Nat'l City Bank,* No. 07 C 2978, 2008 WL 4425446, at *2–3 (N.D. Ill. Sept. 26, 2008). As a general rule, the Fiduciary Obligations Act shields a bank from liability, except where the bank acts with bad faith or actual knowledge of the fiduciary's breach. *See Setera,* 2008 WL 4425446, at *2–3. Here, Smith alleges the Lenards, in their fiduciary role as Powers of Attorney for Swearingen's husband, fraudulently removed over $100,000 of Swearingen's money from her bank account. (Doc. 38, pp. 10-12). Smith alleges that an employee of Peoples National Bank informed him the bank was both aware of and cooperating in the fraud, thus raising a cognizable claim against the bank under the Fiduciary Obligations Act. (Doc. 38, pp. 10-11). Because Smith has alleged cognizable claims for violation of a fiduciary duty against both Davis and Peoples National Bank, not against the Swearingen trust, the claims are not barred by the probate exception.

Finally, the probate exception does not bar Smith's various conspiracy claims against Davis, Martin, and the Lenards. (Doc. 38, pp. 3-12). To prove conspiracy under Illinois law, there must be: (1) an agreement between two or more people intended to accomplish either an unlawful purpose, or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement, that caused an injury to the plaintiff. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Here, Smith alleges the Lenards and Davis conspired to deprive

Swearingen of the restitution owed her from the Lenards for misappropriation of her property—Davis's waiver of all claims against the Lenards on behalf of Swearingen (Doc. 41, p. 3) being an act in furtherance of that conspiracy. Smith alleges a second conspiracy between Davis and Martin, for the purpose of Davis obtaining sole control over the trust in order to allow her to misappropriate the funds. (Doc. 38, pp. 14-16). At least one act in furtherance of the conspiracy is the alleged misrepresentations by Martin regarding the purpose of the document he drafted giving Davis full control as the sole trustee. (Doc. 38, p. 17). Because these conspiracy claims are brought against the individual defendants, and not the trust, they are not barred by the probate exception.

Despite the case law above, the Lenards argue that any legal interests Swearingen has against them were transferred to the trust, and are thus part of the *res* of the probate estate excluded from this Court's jurisdiction by the probate exception. (Doc. 41, p. 6). In support of their argument, the Lenards cite to one unpublished district court case; *M.G.S. ex rel. Sykes v. Toerpe,* No. 11 C 07934, 2012 WL 3235240 (N.D. Ill. Aug. 6, 2012). It is true that in *Sykes,* the district court interpreted the Seventh Circuit decision in *Struck v. Cook County Public Guardian* to stand for the proposition that a person in the control of a probate division becomes the *res* in an *in rem* proceeding. *Id.* at *3.

Upon review of the language in *Struck,* however, this Court is not convinced the Seventh Circuit intended to expand the concept of the *res* in a probate proceeding beyond the property of the estate. The relevant language in *Struck* states "a court other than the one that controls the *res*—the subject of the custody battle *or* the property in the decedent's estate—should not be permitted to elbow its way into such a fight." *Struck v.*

*Cook Cnty. Public Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) (emphasis added). A plain reading of the disjunctive language in the opinion indicates the court in *Struck* was simply providing two examples of what might qualify as a *res* — either the person of a child in a custody battle *or* the property of a decedent in a probate disagreement. Thus, the plain language in *Struck* does not appear to expand the definition of the *res* in a probate case, but rather limits it to the property of the decedent or disabled person. This interpretation is further supported by the court's statement that a conspiracy involving a guardian to violate the rights of a ward could be litigated in federal court. *Id.* Thus, contrary to the argument made by the Lenards, the *Struck* court recognized that not all legal claims of a disabled adult become part of the *res* in a probate case.

For all of the above reasons, the Court finds the probate exception is not applicable in this case.

## II. *ROOKER-FELDMAN* DOCTRINE

The *Rooker-Feldman* doctrine prevents federal courts, other than the Supreme Court, from reviewing state court judgments. *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002). This is a narrow doctrine "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

The first question a court must ask when determining if the *Rooker-Feldman* doctrine applies is whether the goal of the federal plaintiff is to set aside a state court judgment, or whether the plaintiff is presenting an independent claim. *Kamilewicz v. Bank*

*of Boston Corp.,* 92 F.3d 506, 510 (7th Cir. 1996). Federal claims that do not on their face require review of a state court's decision will only be subject to the *Rooker-Feldman* doctrine if the claims are "inextricably intertwined" with the state court judgment.[5] *Taylor v. Federal Nat'l Mortg. Ass'n,* 374 F.3d 529, 532 (7th Cir. 2004). In determining whether a claim is inextricably intertwined, the question becomes whether the federal claim alleges an injury that was caused by the state court judgment, or an independent injury the state court failed to remedy. *See Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 555 (7th Cir. 1999). Even where a claim is inextricably intertwined, however, the district court will only be barred from hearing it if the plaintiff had a reasonable opportunity to raise that issue in state court. *Brokaw v. Weaver,* 305 F.3d 660, 668 (7th Cir. 2002) (citing *Long.,* 182 F.3d at 558).

Where a plaintiff's claims were not ruled on by the state court, the *Rooker-Feldman* doctrine is inapplicable. In *Jones v. Brennan,* a federal claim alleging conspiracy to illegally remove property from an estate was filed before the state court probate litigation was completed. *Jones v. Brennan,* 465 F.3d 304, 305 (7th Cir. 2006). Because the state court never heard or ruled on the claims raised in the federal complaint, the Seventh Circuit found the *Rooker-Feldman* doctrine inapplicable. *Id.* Similarly, here there is no evidence before this Court that the fraud, conspiracy, or breach of fiduciary duty claims were ever before the probate court, let alone ruled on by that court. Thus, Smith's claims do not, on their face, ask this Court to review or overturn a state court ruling in violation of *Rooker-Feldman*.

---

[5] Although not raised here, the Court notes that claims that were or could have been litigated in the state court proceeding also may be barred as claim precluded under *res judicata*. *See Rizzo v. Sheahan,* 266 F.3d 705, 713-14 (7th Cir. 2001).

The Court must determine whether Smith's federal claims are nonetheless "inextricably intertwined" with a state court judgment. Where the purpose or effect of the federal claim is to undo the result of a state court ruling, that claim is inextricably intertwined with the state court proceeding. *See Taylor v. Federal National Mortgage Ass'n*, 374 F.3d 529, 533-34 (7th Cir. 2004). For example, in *Taylor*, the plaintiff filed a claim in federal court alleging the state law foreclosure entered against her was the result of fraud and a violation of several federal statutes. *Id.* at 533. The court found that because the remedy for the fraud claim would be to set aside the foreclosure, the plaintiff was in effect requesting the court vacate the state court decision. *Id.* Further, even though the plaintiff was requesting monetary damages for her statutory claims, rather than a reversal of the lower court order, the purpose of the remedy was to reimburse her for the loss of her home, which would effectively reverse the state court decision. *Id.* at 534. Thus, because the claims raised in federal court would in actuality overturn the results of the state court decision, they were inextricably linked to the state court's foreclosure judgment. *Id.*

Here, the same is not true. First, the only probate ruling of which this court is aware is the one that authorized an estate plan that established a revocable trust. (Doc. 41, pp. 1-2). The Court fails to see how a finding that the various defendants committed tortious acts would in any way impact or overturn the state court's approval of an estate plan. The only claim that causes the Court some pause is Smith's claim that Davis violated her fiduciary duties. It is true that Smith is requesting that money allegedly mismanaged by Davis be reimbursed to the trust. Unlike in *Taylor*, however,

where the reimbursement of the loss of the plaintiff's home would in essence undo the state court's foreclosure ruling, the reimbursement to Swearingen's trust in this case would in no way overturn or modify the state court's order making Davis the trustee.

The Lenards disagree, arguing that a district court lacks subject matter jurisdiction to review a guardian's management of affairs granted by the probate court. (Doc. 41, p. 4). In support of their position, the Lenards again cite to *Sykes v. Toerpe*. The Court finds reliance on this case misplaced. First, nowhere in the *Sykes* opinion does the court state a federal court lacks jurisdiction to review a guardian's management of a disabled adults' affairs.[6] Second, the facts in *Sykes* are substantially different than those before this Court. In *Sykes*, the plaintiffs were attacking both the state court's determination that the adult ward was disabled and the court's appointment of Ms. Toerpe as the guardian. *Id.* at *2. The district court found that because the plaintiffs sought injunctive relief that would result in the federal court overturning the probate court's appointment of Toerpe as guardian, that *Rooker-Feldman* was violated. *Id.* at *3. Here, Smith has not asked this Court to remove Davis as the trustee. Thus, unlike the relief requested in *Sykes*, a finding by this Court that Davis violated her fiduciary duty would in no way alter or overturn the probate court's appointment of her as the trustee.[7] Thus, the *Rooker-Feldman* doctrine does not bar federal jurisdiction in this case.

---

[6] The Lenards appear to be relying on a single sentence in the opinion stating the claims by the plaintiffs "call into question the legitimacy of the judgments of the appointed guardian." *Sykes*, 2012 WL 3235240, at *3. The district court in *Sykes* does not, however, seem to focus on this fact as the basis for its *Rooker-Feldman* analysis. Rather, the ruling was based on the fact the plaintiffs were seeking to overturn the appointment of the guardian by the state probate court. *Id.*

[7] The Lenards' other reference to case law, *Struck v. Cook County Public Guardian*, 508 F.3d 858 (7th Cir. 2007), is equally unpersuasive. In that case, the plaintiff also attempted to get a guardian removed in state court, and when he lost in that venue, filed a claim in federal court. *Id.* at 859. The Seventh Circuit found

## III. DIVERSITY JURISDICTION

Smith alleges diversity of citizenship under 28 U.S.C. § 1332 as the basis for this Court's subject matter jurisdiction. (Doc. 1, p. 3). To satisfy diversity jurisdiction, a plaintiff must allege: (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and (2) the controversy is between citizens of different states. 28 U.S.C. § 1332. Here, Smith alleges damages in the amount of $700,000, far in excess of the required $75,000, thus the first requirement is met.

For diversity jurisdiction purposes, an individual is considered to be the citizen of the state in which she is domiciled, *Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 155 n. 4 (7th Cir. 1994), which means the state where the person is physically present with an intent to remain indefinitely, *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993). Here, Bernie Smith brings claims in his representative capacity as a co-guardian of the estate of his mother, Bonnie Smith Swearingen.[8] A guardian who brings suit in that capacity has the citizenship of his ward. 28 U.S.C. § 1332(c)(2); *Gustafson v. Zumbrunnen*, 546 F.3d 398, 400 (7th Cir. 2008). The parties apparently agree that Bonnie Smith Swearingen is a citizen of Indiana, where she lives in a skilled nursing facility. (Doc. 18, p. 2, n. 1). Defendants are all citizens of Illinois. (Doc. 41, p. 8). As such, complete diversity exists.

The Lenards claim that Smith also has filed claims in his individual capacity, and

---

that because this was a request for review of the state court decision appointing the guardian, it was barred by Rooker-Feldman. *Id.* For the reasons stated above, that analysis is inapplicable here.

[8] Originally, Tara Smith was also listed as a plaintiff in this case. Because she is a citizen of the state of Illinois, and all of the defendants are citizens of Illinois, her presence as a plaintiff would defeat diversity. As the Indiana Court recognized, however, Tara Smith did not have any individual claims and had only joined as a plaintiff to support her husband. (Doc. 18, p. 2, n. 1 ). This Court therefore granted Tara Smith's request to be removed as a plaintiff after transfer of the case. (Doc. 29). Thus, the only plaintiff remaining is Bonnie Smith Swearingen, by her co-guardian Bernie Smith.

thus his citizenship (Illinois) defeats diversity. (Doc. 41, p. 8). The basis of this claim is the Lenards' statement that Smith "appear[s] to be filing claims on his own behalf related to the use, occupancy and/or inheritance" of Swearingen's residence. (Doc. 41, p. 8). Presumably, the Lenards want the Court to read this statement as evidence that Smith is raising an Illinois tort claim for intentional interference with inheritance. Such a claim would be brought by Smith in his individual capacity, not as a guardian on Swearingen's behalf. The Court is not convinced, however, that this is Smith's intent. Unlike the Lenards, Smith is proceeding *pro se* and does not appear to be a sophisticated litigant. Smith has been clear that his intent is to represent his mother's interests, and he has made no request for personal restitution relating to his rental of or residency in Swearingen's house. (Doc. 38, pp. 12-13). In fact, all of Smith's requests for restitution relate to his claims of fraud, conspiracy, or the violation of various fiduciary duties. (Doc. 38, pp. 12-18). Further, Smith requests that all restitution be paid into Swearingen's trust, not to himself. (Doc. 38, pp. 12-13). Thus, the Court does not read the factual recitations in the Amended Complaint regarding the termination of Smith's lease as an attempt to insert an individual claim for his own benefit. Rather, the statements appear to be an unsophisticated litigant's attempt to bring all of the alleged bad behavior by the defendants to the Court's attention.

## Conclusion

Because the probate exception and *Rooker-Feldman* doctrine are inapplicable and complete diversity exists between the parties, the Court finds it has jurisdiction to hear Smiths various claims of fraud, conspiracy, and violation of a fiduciary duty. Further,

because all of the issues raised in the two motions to dismiss were addressed as part of the Court's *sua sponte* analysis, both the Second and Third Motions to Dismiss (Docs. 30, 40) are **DENIED as moot.**

As the Court noted previously, Smith is proceeding *pro se.* Given the complexity of the legal issues, Smith may want to consider retaining counsel. Without determining whether he would qualify for or benefit from recruitment of court appointed counsel, the Court **DIRECTS** the Clerk of Court to send to Smith the form "Motion for Recruitment of Counsel." Smith may, at his discretion, fill out the form and submit it for the Court's consideration.

**IT IS SO ORDERED.**

DATED:   October 12, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**